J-A20003-17

2018 PA Super 140

| NICHOLAS KNOPICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| DENNIS BOYLE AND BOYLE | : | |
| LITIGATION | : | |
| | : | |
| Appellant | : | No. 99 MDA 2017 |

Appeal from the Order Entered December 29, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s):  2014-06697

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

OPINION BY GANTMAN, P.J.:                    **FILED MAY 30, 2018**

Dennis Boyle and Boyle Litigation (collectively "Appellant"), appeal from an interlocutory discovery order, entered in the Cumberland County Court of Common Pleas Civil Division, which granted Appellee's motion to compel disclosure of certain electronic documents, over Appellant's objection that the documents are protected by the attorney-client privilege. For the reasons that follow, we affirm.

The relevant facts and procedural history of this appeal are as follows. Appellee sued Appellant in 2014 for legal malpractice sounding in breach of contract, negligence, fraud, and conversion, based on allegations that Appellant comingled trust account funds with operating funds to pay firm expenses. During discovery in the present malpractice case, Appellee sent

notice to a non-party, Donald Sherman, for a videotape deposition, along with a subpoena for certain documents from his personal email account.

> [Mr.] Sherman is a former non-attorney employee of [Appellant]. One of his duties was to reconcile the attorney trust account. Sometime in November of 2012, Mr. Sherman became concerned about possible issues with the account. As a result, he created a list of those concerns and emailed them to himself. He used his personal email account to both send and receive the list. He eventually met with an attorney, who was not of Boyle Litigation. He also met with a second lawyer, who was employed by Boyle Litigation, on a later occasion.
>
> During the deposition of Mr. Sherman, [Appellee] sought the November 2012 email memorializing the concerns regarding the trust account. [Appellant's] Attorney represented Mr. Sherman at the deposition. He took the position that the email was subject to attorney-client privilege. Thereafter, [Appellee] filed a Motion to Compel. After hearing argument, [the trial court was] satisfied that the email was not subject to attorney-client privilege. Consequently, [the trial court] ordered [Appellant] [on December 29, 2016,] to produce it.[1]
>
> [Appellant]'s concise statement of [errors] complained of on appeal alleges that [the trial court] erred in 1) holding that the email in question is not subject to the attorney-client privilege; 2) failing to perform an in-camera inspection of the email; and 3) ordering the production of a document that is the property of a non-party.

(Trial Court Opinion, filed March 22, 2017, at 1-2) (internal citations omitted).

Appellant raises the following issues for our review:

_____

[1] Appellant filed a notice of appeal on January 12, 2017. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

DID THE TRIAL COURT ERR AND INCORRECTLY INTERPRET/APPLY THE ATTORNEY-CLIENT PRIVILEGE BY ORDERING THE PRODUCTION OF NOTES THAT WERE PREPARED BY A CLIENT IN ANTICIPATION OF A MEETING WITH HIS ATTORNEY, CONTAINING THE ISSUES THE CLIENT WISHED TO DISCUSS WITH HIS ATTORNEY, SO THE CLIENT COULD RECOLLECT AND CONVEY THOSE ISSUES TO HIS ATTORNEY DURING THE ATTORNEY-CLIENT MEETING?

DID THE TRIAL COURT ERR BY HOLDING THAT THE NOTES IN QUESTION WERE NOT SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE WITHOUT FIRST ORDERING OR PERFORMING ANY INSPECTION OF THE NOTES, DESPITE A PARTY'S REQUEST FOR *IN CAMERA* INSPECTION OF THE NOTES?

DID THE TRIAL COURT ERR BY ORDERING THE PRODUCTION OF THE NOTES IN QUESTION DESPITE THE FACT THAT (A) [APPELLEE'S] MOTION TO COMPEL WAS DIRECTED TO AND SOUGHT RELIEF FROM ONLY [APPELLANTS], RATHER THAN NON-PARTY DONALD SHERMAN, AND (B) THE NOTES IN QUESTION WERE THE PROPERTY OF ONLY NON-PARTY SHERMAN?

(Appellant's Brief at 4).

As a prefatory matter, Appellee has filed a motion to quash this appeal as interlocutory and unappealable. Specifically, Appellee contends (a) Appellant failed to make a colorable claim of attorney-client privilege, (b) Appellant does not own the privilege asserted, and (c) the subject ruling does not qualify for review under the collateral order doctrine. For these reasons, Appellee concludes this Court should quash the appeal. We disagree.

In this regard, "[T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." ***In re Estate of***

- 3 -

*Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa.Super. 2009).

"Accordingly, this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." *Id.*; *Stanton v. Lackawanna Energy, Ltd.*, 915 A.2d 668, 673 (Pa.Super. 2007). As a general rule:

> [T]his Court will not provide interim supervision of discovery proceedings conducted in connection with litigation pending in the several trial courts. In the absence of unusual circumstances, we will not review discovery or sanction orders prior to a final judgment in the main action.

*Robec, Inc. v. Poul*, 681 A.2d 809, 811 (Pa.Super. 1996) (quoting *McManus v. Chubb Group of Ins. Companies*, 493 A.2d 84, 87 (Pa.Super. 1985)). *See, e.g., Harrison v. Hayes*, 870 A.2d 326 (Pa.Super. 2005), *appeal denied*, 584 Pa. 708, 885 A.2d 42 (2005) (quashing appeals of three interlocutory orders because (a) orders involved did not seek private information; they sought only general information about common policies, procedures, and practices involved in credentialing physicians at defendant hospital; information sought was important only to parties to litigation and did not concern issues of public policy or seek disclosure of privileged information; and (b) defendant hospital had no standing to object to subpoena directed to non-party hospital on ground of privilege because only non-party hospital could assert any alleged privilege) .

Nevertheless, "A non-final order may be reviewed if it is separable from and collateral to the main cause of action, the right involved is too important to be denied review and the question presented is such that if

- 4 -

review is postponed until final judgment in the case, the claim will be irreparably lost." ***Leber v. Stretton***, 928 A.2d 262, 265 (Pa.Super. 2007), *appeal denied*, 596 Pa. 733, 945 A.2d 172 (2008) (citing Pa.R.A.P. 313 (governing collateral orders)). ***See, e.g., Ben v. Schwartz***, 556 Pa. 475, 729 A.2d 547 (1999) (allowing appeal from discovery order compelling production of putatively privileged documents, where resolution of issue of whether documents were subject to executive or statutory privilege implicated rights rooted in public policy and affected individuals other than those involved in particular litigation; in weighing competing consideration of costs of piecemeal review against costs of delay, public interests expressed in form of statutory privileges tips balance in favor of immediate appellate review; order permitting discovery of investigative files was of such nature that if review were postponed until final judgment in case, then claim would be irreparably lost, as disclosure of documents could not be undone).

Rule 313 of the appellate rules defines a collateral order as:

**Rule 313.  Collateral Orders**

**(a)  General rule.**  An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

**(b)  Definition.**  A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.  Rule 313 is jurisdictional in nature. ***Rae v. Pennsylvania***

*Funeral Directors Association*, 602 Pa. 65, 71-72, 977 A.2d 1121, 1125 (2009) (reiterating Rule 313 is subject to narrow construction and each prong must be satisfied to allow appellate review under this rule). If the discovery order requires the appealing party to produce materials which "the appealing party has asserted are privileged, [Rule 313] applies, and we accept jurisdiction." *BouSamra v. Excela Health*, 167 A.3d 728, 734 (Pa.Super. 2017), *appeal granted on other grounds*, 2018 WL 620417 (Pa. January 30, 2018). *See also Ben, supra*; *Estate of Paterno v. National Collegiate Athletic Association (NCAA)*, 168 A.3d 187, 201 (Pa.Super. 2017) (citing *Berkeyheiser v. A–Plus Investigations, Inc.*, 936 A.2d 1117, 1123-24 (Pa.Super. 2007) (stating generally that discovery orders **compelling disclosure** of potentially confidential and privileged materials are immediately appealable as collateral to principal action)).

Instantly, the order before us on appeal directs **Appellant** to disclose Mr. Sherman's email, which Appellant claims is protected by the statutory attorney-client privilege. As presented, Appellant's claim appears to fall within the narrow exception set forth in *Ben, supra* and *BouSamra, supra* (allowing appeal by defendant party, under collateral order doctrine, from interlocutory discovery order **directing defendant party** to disclose email from that party's outside counsel to that party's in-house counsel and certain emails generated in response to that initial email, where email chain included three members of independent public relations firm hired by

- 6 -

defendant party). **Compare Harrison, supra** (quashing appeal of defendant hospital from interlocutory discovery order that permitted patient-plaintiff to subpoena discovery materials from different, non-party hospital, because defendant hospital had no standing to appeal order directed to non-party hospital, on ground of privilege, where alleged privilege belonged to non-party hospital). Here, Appellant's "standing" to assert the attorney-client privilege concerning Mr. Sherman's email is an inquiry distinct from Appellant's standing to appeal the disclosure order directed to Appellant. *See* Pa.R.A.P. 501 (stating: "Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom. *Note*: Whether…a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, *etc.*"). Appellant is aggrieved by the order directing Appellant to disclose the email, which gives Appellant standing to appeal the disclosure order. Contrary to Appellee's contention, Appellant's status as "aggrieved" by the disclosure order does not necessarily defeat the collateral order doctrine. Otherwise, no party ordered to disclose arguably protected material would be able to appeal the disclosure order, which is simply not collateral order doctrine law. Keeping in mind the significant distinction between Appellant's standing to appeal and Appellant's standing to assert a statutory privilege, we will accept appellate jurisdiction in this case and deny Appellee's motion to quash on

- 7 -

the grounds asserted.

On appeal, Appellant first argues the email Mr. Sherman sent to himself is subject to the attorney-client privilege because the email contained notes Mr. Sherman had made in preparation for a meeting with an outside attorney for personal legal advice. Appellant concedes Pennsylvania has no controlling law to cover this particular situation, but Appellant analogizes to the generally-accepted view in this jurisdiction that the attorney-client privilege covers notes taken **during a meeting** with an attorney. Appellant asserts the same protection should extend to the notes an individual makes in anticipation of meeting with an attorney because this expansion of the privilege advances the public policy reasons behind the attorney-client privilege. Appellant emphasizes that the overall purpose of this privilege is to encourage open and honest communication between client and attorney so the attorney can provide the best legal advice based on all applicable information. Appellant submits the attorney-client privilege should preclude any disclosure of Mr. Sherman's email to himself in preparation for a meeting with outside counsel.

Next, Appellant claims Mr. Sherman's email meets the four requirements of attorney-client privilege, as stated in 42 Pa.C.S.A. § 5916. Specifically, Appellant maintains Mr. Sherman wrote the email with the intent to become the client of a licensed bar member; he created the email with the intent to convey the information contained in the email to an

attorney during the course of receiving that attorney's legal advice; Mr. Sherman gave the email only to his attorney; and Mr. Sherman did not waive his attorney-client privilege. As a practical matter, Appellant's counsel asserted the privilege at Mr. Sherman's deposition, purportedly on behalf of Mr. Sherman, who is not a party to this litigation. Appellant reasons Mr. Sherman's email, containing his notes in preparation for consultation with an attorney, passes the four-part test for attorney-client privilege.

Appellant predicts the trial court's decision to authorize the release of Mr. Sherman's email, created in anticipation of meeting with an attorney, will have far-reaching consequences and affect Mr. Sherman's ability to obtain sound legal advice. Appellant states generally that the disclosure ruling in this context will have a ripple effect of putting any client at risk that those notes can be later used against the client. Appellant then offers that the subject email in this case is analogous to notes a client takes at the behest of his attorney and gives to the attorney, which notes are undeniably privileged. Appellant insists that whatever prompted the creation of the notes is fundamentally immaterial, *i.e.*, whether a suit was already underway or simply anticipated. Appellant submits this Court should adopt the standards held in other jurisdictions, which declare client notes are privileged when a client prepares them in anticipation of a meeting with an attorney to facilitate that meeting.

Next, Appellant maintains the trial court should have performed an *in*

*camera* inspection of Mr. Sherman's email before ordering its disclosure, as Appellant had requested. Appellant insists an *in camera* review is often necessary for a court to determine what a document says and whether it is privileged. Appellant further suggests that if the court had performed an *in camera* review of the email, then the court would have realized how necessary the email was for Mr. Sherman's anticipated meeting with counsel and the privileged character of the email. Appellant contends the court erred in refusing to examine the email under these circumstances before ordering its disclosure.

Finally, Appellant complains the court should have compelled Mr. Sherman, rather than Appellant, to disclose his email. Appellant emphasizes there is no proof Appellant has or had a copy of the email and points to Mr. Sherman's deposition testimony that he shared his email only with his attorneys.[2] Appellant asserts that, even if Appellant had obtained a copy of Mr. Sherman's email, then the privilege would still be intact because Mr. Sherman's attorney also represented Appellant. Appellant concludes Mr.

_____

[2] Appellant complains it is basically unable to comply with the disclosure order as Appellant does not "possess" the "notes" in question. Assuming Appellant is talking about the email, we frankly have no way to know whether Appellant's averments are true, especially if Mr. Sherman created the email during his employment with Appellant and through Appellant's computer system. This matter can be sorted out as the case proceeds but it does not affect the outcome of the present appeal on the question of attorney-client privilege, which is the only issue that qualifies for immediate review.

Sherman's email remains protected by the attorney-client privilege, and we should reverse the order directing Appellant to disclose the email. We cannot agree.

"Whether the attorney-client privilege…protects a communication from disclosure is a question of law. Thus, our standard of review is *de novo* and our scope of review is plenary." **BouSamra, supra** at 734; **Estate of Paterno, supra**. Pennsylvania law defines the attorney-client privilege by statute as follows:

> **§ 5928. Confidential communications to attorney**
>
> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928. Attorney-client privilege is not automatic; it must be invoked successfully by satisfaction of a four-element test:

> Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege. The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some exception applies. Accordingly, if the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege.
>
> Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege:

- 11 -

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 376

(Pa.Super. 2012), *appeal denied*, 618 Pa. 688, 57 A.3d 71 (2012) (internal

citations and quotation marks omitted).  Additionally,

The party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege.  Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies.  Accordingly, [i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege.  The trial court determines whether the facts support the asserted privilege.

*Estate of Paterno, supra* at 194 (internal citations and quotation marks

omitted).

"[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 88-89, 15 A.3d 44, 59 (2011). In reaching this holding, the *Gillard* Court began by restating the historically acknowledged purpose of the privilege, *i.e.*, to encourage free and open communications between counsel and client that will lead to a trusting and candid discourse. *Id.* at 75-76, 15 A.3d at 51.

Nevertheless, established Pennsylvania law also makes clear that it is the client who owns this privilege: "The purpose of the attorney-client privilege is to benefit the client, and accordingly, the client is the holder of the privilege." *Maleski v. Corporate Life Ins. Co.*, 646 A.2d 1, 4 (Pa.Cmwlth. 1994). Additionally, "the right to assert the privilege is that of the client." *Commonwealth v. McKenna*, 213 A.2d 223, 226 (Pa.Super. 1965) (citing *Appeal of McNulty*, 135 Pa. 210, 19 A. 936 (1890)). The traditional canon remains intact, *i.e.*, the client holds the attorney-client privilege; *Gillard* elaborated only on the scope of the privilege. *See Gillard, supra*.

In the present case, the trial court reasoned:

> [Appellant] assert[s] that the attorney-client privilege is applicable to Mr. Sherman's personal email from himself to himself. [Appellant] contended that the privilege applied because Mr. Sherman spoke with several attorneys about things that were referenced in the email. As the party asserting the attorney-client privilege, [Appellant] had the

initial burden to prove that the privilege had been properly invoked. Mr. Sherman's email clearly was not a confidential communication to an attorney. The email was a communication from Mr. Sherman to himself. It was done to document his concerns prior to his having made any contact with an attorney. It therefore was not a communication that otherwise would not have been made but for the protection of the attorney-client privilege. Under these circumstances, an in-camera review was unnecessary.

As to the alleged violation of Mr. Sherman's rights, we did not direct Mr. Sherman to produce the email. The order directed [Appellant] to produce their copy. Assuming *arguendo* that the e-mail fell within the scope of the attorney-client privilege, the fact that [Appellant] obtained a copy vitiates that privilege.

(Trial Court Opinion at 3) (internal citation omitted).

Here, Appellant casts its position on the attorney-client privilege largely in generic terms, as if Mr. Sherman and Appellant are one entity/client, which is grossly misleading. First, Mr. Sherman created the email before consulting an attorney and sent the email to himself. Mr. Sherman's email was not created as a confidential communication to an attorney for the purpose of securing legal advice or created upon directive of counsel. Further, Mr. Sherman is the proper owner of any privilege that might attach to the email he created. Moreover, Mr. Sherman is not a party to the present litigation and is not asserting the privilege.

Appellant cites no law to support its contention that it can invoke Mr. Sherman's privilege or that the privilege somehow transferred to Appellant or that Appellant absorbed it by osmosis, simply because Appellant's counsel

once assumed he could assert the privilege on Mr. Sherman's behalf at a deposition in the present case. No one disputes the order at issue directed only Appellant to produce the email, and Appellant shares no attorney-client relationship with Mr. Sherman. Thus, as the party raising the attorney-client privilege, Appellant failed to satisfy the burden of production to invoke protection under the privilege. **See Estate of Paterno, supra**; **Custom Designs & Mfg. Co., supra**. Therefore, the court had no reason to conduct an *in camera* inspection of the email before ordering Appellant to disclose it in this case.

Based upon the foregoing, we hold the order before us is immediately appealable as a collateral order, under prevailing law, and Appellant has standing to seek review of the court's ruling because Appellant is a party to the present case and the court's order directed Appellant to disclose the email. **See Ben, supra**; **BouSamra, supra**. **See also** Pa.R.A.P. 313 and 501. Nevertheless, Appellant lacks standing to assert that the ordered disclosure is privileged, because the attorney-client privilege belongs to Mr. Sherman, not to Appellant. **See McKenna, supra**. Thus, Appellant failed to satisfy the four-element test to invoke protection under the attorney-client privilege with respect to Mr. Sherman's email. **See Custom Designs & Mfg. Co., supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/30/18