J. A19025/18

2019 PA Super 288

| | | |
|---|---|---|
| LESLEY COREY, AS ADMINISTRATRIX OF THE ESTATE OF JOSEPH COREY, AND LESLEY COREY, IN HER OWN RIGHT | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| WILKES BARRE HOSPITAL COMPANY, LLC D/B/A WILKES-BARRE GENERAL HOSPITAL EMERGENCY DEPARTMENT AND J. CHARLES LENTINI, M.D. | : : : : : | |
| v. | : : | |
| PENNSYLVANIA PHYSICIANS SERVICES, LLC | : : : | No. 1980 MDA 2017 |
| APPEAL OF: LESLEY COREY | : | |

Appeal from the Order Entered November 20, 2017,
in the Court of Common Pleas of Luzerne County
Civil Division at No. 2015-07551

BEFORE:  GANTMAN, P.J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

OPINION BY FORD ELLIOTT, P.J.E.:              Filed:  September 23, 2019

Lesley Corey, as administratrix of the Estate of Joseph Corey, and Lesley Corey, in her own right, appeals from the order granting the motions of Wilkes Barre Hospital Company, LLC d/b/a Wilkes-Barre General Hospital Emergency Department and J. Charles Lentini, M.D. (collectively, "WBH"), ordering the production of certain privileged documents and directing appellant to submit to a second deposition.  We affirm.

The trial court set forth the following:

> [O]n November 25, 2015, [appellant] filed a Complaint alleging injuries relating to medical care provided to [her husband,] Joseph Corey [("decedent")] for wrongful death, a survival action, loss of consortium, and corporate negligence.
>
> As noted above, [appellant] asserted a loss of consortium claim in the pending civil matter. The Luzerne County Court of Common Pleas Docket indicates that [appellant] filed a Divorce Complaint against [decedent] on February 5, 2013. . . . In the Divorce Complaint[, appellant] averred that the marriage was irretrievably broken pursuant to [23 Pa.C.S.A.] § 3301(c); two year separation pursuant to § 3301(d); and indignities pursuant to § 3301(a)(6) among other claims. A Counterclaim was filed by [decedent] on April 1, 2013 and included irretrievable breakdown and fault divorce (indignities) among other claims. . . . During the time frame after the divorce action was filed, [decedent] passed away on August 11, 2013. The divorce action was active approximately six (6) months from the time of filing until the date of [decedent]'s death.
>
> From the early stages of discovery, [WBH] challenged the loss of consortium claim. On December 15, 2015, preliminary objections were filed including an objection to strike [appellant]'s claim for loss of consortium. On July 21, 2016, the preliminary objection was overruled as premature. Thereafter, throughout the course of proceedings, [WBH] continued to verbally raise the request to dismiss the loss of consortium claim.
>
> In addressing the loss of consortium claim, subpoenas were issued by [WBH] for divorce records and on January 5, 2017, [appellant] filed objections to [the] Notice of Intent to Serve Subpoenas to [Brian J. Cali, Esq., appellant's divorce counsel,] and [Jonathan S. Comitz, Esq., decedent's divorce counsel]. On February 8, 2017, an Order was filed granting the

Motion to Strike Objections filed by [WBH] and ordering counsel to respond within twenty (20) days.

Thereafter, on February 24, 2017, objections to subpoenas were filed by Attornay Comitz and Attorney Cali. [WBH] filed a Motion to Strike Objections to Subpoenas by Attorneys Comitz and Cali on March 9, 2017. A hearing was conducted wherein Comitz Law Firm and Brian Cali participated as to the divorce records and an order was issued on April 11, 2017 wherein the motion to strike objections to subpoenas was granted; the motion for sanctions was denied; and the subpoena for divorce records was to be answered within thirty (30) days. Attorneys Cali and Comitz provided documents regarding the divorce matters that were non-privileged to the parties in this action [and a privilege log].

On May 3, 2017, [WBH] filed a Motion to Compel the production of documents enumerated in the privilege log prepared by [Attorney Cali]. A hearing was conducted and an Order was issued on June 6, 2017 wherein Attorney Cali was directed to provide the court with the privilege log and documents for an *in*[ ]*camera* review.

It should be noted that [appellant] did not specifically object or file an appeal regarding the June 6, 2017 order wherein the court received and began the *in*[ ]*camera* review of the privilege log submitted by [appellant's divorce counsel].[Footnote 2] The only response by [appellant's] counsel at that time was as follows: "I have one limited role here on this issue and that is to confirm that [appellant] has not and will not waive the attorney-client privilege[."] Accordingly, there was no objection, or appeal to the *in*[ ]*camera* review raised at that time.

[Footnote 2] In the current appeal[, appellant] is arguing that an *in*[ ]*camera* review of the privileged documents is error. Again, [appellant] did not object nor did [appellant] request appellate

review at the issuance of the June 6, 2017 order.

After receipt of non-privileged documents, [WBH] filed a Notice of Deposition to [appellant], arguing that the divorce records provided reflected significant inconsistencies in the prior deposition testimony of [appellant].[Footnote 3] [Appellant] objected to the second deposition of [appellant] arguing that she was questioned extensively regarding the divorce proceedings over the course of the initial five (5) hour deposition. A hearing on this issue was conducted on August 17, 2017 and the matter was taken under advisement. Thereafter, on October 11, 2017[, WBH] filed motions for partial Summary Judgment, which included dismissal of the loss of consortium claims.

> [Footnote 3] [Appellant] was initially deposed in this matter on February 3, 2017 prior to the receipt of the non-privileged divorce documents.

A hearing was scheduled for November 20, 2017 regarding the partial summary judgments. Prior to addressing the partial summary judgment the Court addressed the outstanding matter of the *in*[ ]*camera* review of the divorce privilege log and the second deposition of [appellant] since these issues were indisputably connected to the loss of consortium claim and the pending partial summary judgment of that claim.

The Court began oral argument by inquiring if [appellant], after review and release of the non-privileged documents in regard to the divorce, was continuing to pursue the loss of consortium claim. [Appellant's counsel] indicated that they still intended to pursue the claim.

At that time, the Court noted, "As I have said repeatedly, ordinarily an attorney-client privilege maintains the utmost authority that is rarely if at any time called into question." The Court further noted the basis of the loss of consortium claim directly

reflects the status of the marriage at the time of [decedent]'s death. Further the Court specifically stated, "Each of these documents are relevant and discoverable because they were placed into evidence by [appellant] in seeking her loss of consortium claim and the elements that are contained within the loss of consortium claim."

An order was issued on November 20, 2017 indicating that the documents contained in the privilege log are relevant and discoverable, thereby granting the Motion to Compel the Production of Documents Numbered (4), (6), (7), (8), (10), (11), (12), (13), (14), and (15)[Footnote 4] of the Privilege Log prepared by [appellant's divorce counsel].[1] The Motion of [WBH] to Strike [appellant]'s Objections to the Deposition of [appellant] and for Leave of Court to Conduct [a] Second Deposition of [appellant] was also granted.

> [Footnote 4] The privileged documents that were released pursuant to the November 20, 2017 order were not filed of record to protect the privacy of [appellant]. In correspondence provided to counsel, the privileged documents were provided indicating if there was an objection, counsel should notify the court. For the purposes of this appeal, the privileged documents are filed simultaneously under separate order and sealed.

Thereafter, on November 27, 2017, [WBH] filed a Motion for Contempt of Court and Sanctions Directed to [appellant's counsel] for Failure to Comply with [the trial court's] Order dated November 20, 2017. On

___

[1] The documents at issue in this appeal were identified in correspondence from Attorney Cali's office to counsel for Wilkes Barre Hospital Company, LLC d/b/a/ Wilkes-Barre General Hospital Emergency Department as eight emails appellant sent to her divorce counsel between May 8, 2013 and August 14, 2013, and one memorandum prepared by appellant and contained in divorce counsel's file dated May 14, 2013. (Correspondence, 4/28/17.)

December 4, 2017, [appellant] filed an Answer to [WBH]'s Motion for Sanctions which included cross motions to disqualify [the trial c]ourt and a motion to vacate the [trial] court's Order dated November 20, 2017. A hearing was held on December 6, 2017 in which [WBH]'s Motion for Contempt of Court and Sanctions was taken under advisement and [appellant]'s cross motion to disqualify the [trial c]ourt was denied. [Appellant]'s cross motion to vacate the Order dated November 20, 2017 was dismissed.

On December 15, 2017, [appellant] filed [a] Motion for Reconsideration of the Order of November 20, 2107 and a separate Motion for Reconsideration of the Order of November 20, 2017 and All Other Orders Which Pertain to Attorney/Client Privileged Communication. The motions for reconsideration were deemed moot based upon the appeal filed by [appellant].

Trial court opinion, 4/11/18, at 1-6 (citations omitted; footnote 1 omitted).

Appellant filed a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The trial court then filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:[2]

[1.] Does Pennsylvania recognize a Loss of Consortium exception to the attorney-client privilege, in the manner determined by the trial court, in overruling the objections of [appellant] and the law firms involved in a previous divorce action based upon the attorney-client privilege and their obligations pursuant to the Rules of Professional Conduct?

---

[2] For ease of disposition, we have reordered appellant's issues.

[2.] Did the trial court commit reversible error by conducting an *in camera* review and subsequently ordering production of confidential attorney-client communications, when such communications were clearly protected by the attorney-client privilege as codified at 42 Pa.C.S.A. [§] 5928?

3. Did the trial court abuse its discretion by directing [appellant] to present herself for a second deposition and questioning based upon confidential communications between [appellant] and her attorneys, when such communications were clearly protected by the attorney-client privilege?

Appellant's brief at 12.

At the outset, we note that on January 17, 2018, WBH filed with this court a motion to quash this appeal as interlocutory. Appellant filed a response. This court then entered an order denying the motion without prejudice to WBH's right to raise appealability with the merits panel. WBH raises the appealability issue in its brief.

Because the appealability of an order is jurisdictional, our standard of review is *de novo*, and our scope of review is plenary. *Rae v. Pennsylvania Funeral Directors Ass'n*, 977 A.2d 1121, 1126 n.8 (Pa. 2009); *Knopick v. Boyle*, 189 A.3d 432, 437 (Pa.Super. 2018). "An appeal may be taken only from a final order unless otherwise permitted by statute or rule." *Carbis Walker, LLP. v. Hill, Barth & King, LLC*, 930 A.2d 573, 577 (Pa.Super. 2007) (citation omitted). Moreover, this court "will not provide interim supervision of discovery proceedings conducted in connection with litigation

pending in the several trial courts. In the absence of unusual circumstances, we will not review discovery or sanction orders prior to a final judgment in the main action." ***Knopick***, 189 A.3d at 436 (citations omitted). It is well settled, however, that

> [c]ollateral orders are one exception to this general rule. Pa.R.A.P. 313(a). The collateral order doctrine allows for immediate appeal of an order which: (1) is separable from and collateral to the main cause of action; (2) concerns a right too important to be denied review; and (3) presents a claim that will be irreparably lost if review is postponed until final judgment in the case.

***Carbis Walker***, 930 A.2d at 577 (case law citation omitted).

Generally, a discovery order that raises a "colorable claim of attorney-client" privilege may be appealed immediately under Rule 313. ***Gocial v. Indep. Blue Cross***, 827 A.2d 1216, 1220 (Pa.Super. 2003). The Supreme Court of Pennsylvania, however, has held that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." ***Rae***, 977 A.2d at 1130.

Here, appellant's challenge to the November 20, 2017 order requiring her to disclose the communications identified in the privilege log and submit to a second deposition satisfies the requirements of the collateral order doctrine. First, appellant's claim of attorney-client privilege is separable from and collateral to appellant's medical malpractice action. Second, appellant's claim of attorney-client privilege to protect communications from compelled

disclosure concerns a right too important to be denied review. Finally, the claim presents issues that would be irreparably lost if review is postponed until final judgment; specifically, compelled disclosure of documents alleged to be privileged. *See* Pa.R.A.P. 313(a). Therefore, we decline to quash this appeal.[3]

*See Gocial*, 827 A.2d at 1220.

> Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law. This Court's standard of review over questions of law is *de novo*, and the scope of review is plenary. Our review of a discovery order, . . . requires the application of an abuse of discretion standard.

*Saint Luke's Hosp. of Bethlehem v. Vivian*, 99 A.3d 534, 540 (Pa.Super. 2014) (citations and quotation marks omitted).

The attorney-client privilege provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

---

[3] We are not convinced by WBH's assertion that the trial court's June 6, 2017 order was immediately appealable under Rule 313. As noted below, the attorney-client privilege is not absolute and often requires the trial court to review the materials *in camera* to determine whether the privilege applies and whether disclosure is appropriate. Therefore, a claim of privilege would not be irreparably lost until the court completed its review. *See* Pa.R.A.P. 313.

We also find no binding authority for WBH's suggestion that the alleged failure to take an immediate appeal of an order requiring an *in camera* review waives a party's right to appeal a subsequent order directing disclosure of the allegedly privileged materials to another party.

42 Pa.C.S.A. § 5928.  The attorney-client privilege exists to

encourage clients to provide information freely to their attorneys to allow the attorney to give sound and informed advice to guide their clients' actions in accordance with the law.  As the privilege encourages clients to speak openly with their counsel, [Pennsylvania courts] recognize that in many cases, the privileged communications kept from the court do not really represent a loss of evidence since the client would not have written or uttered the words absent the safeguards of the attorney-client privilege.  We are further cognizant that to attain the privilege's goals, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected.  An uncertain privilege . . . is little better than no privilege at all.

Our Supreme Court has noted the ongoing tension between the two strong, competing interests-of-justice factors in play - namely - the encouragement of trust and candid communication between lawyers and their clients, and the accessibility of material evidence to further the truth-determining process.  Regarding the latter interest, our Supreme Court has explained as follows.

Evidentiary privileges are not favored.  Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.  Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.

The privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by

> the exercise of the privilege, the trial judge may
> require that the communication be disclosed.

*Red Vision Sys. v. Nat'l Real Estate Info. Services, L.P.*, 108 A.3d 54, 61-62 (Pa.Super. 2015) (internal citations, brackets, and quotation marks omitted).

Appellant first contends that the trial court erred in finding a loss of consortium exception to the attorney-client privilege.

Our supreme court has long recognized that "a loss of consortium claim includes a claim for loss of sexual relations. Consortium is defined as 'the legal right of one spouse to the company, affection, and assistance of and to sexual relations with the other.'" *Tucker v. Phila. Daily News*, 848 A.2d 113, 127 (Pa. 2004) (citation omitted). Consortium has more generally been defined as "[c]onjugal fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation." *Id.* (citations omitted). Therefore, to recover on a loss of consortium claim, the spouse who brings the claim must demonstrate an injury to the marital relationship that deprives him or her of the conjugal fellowship, company, society, cooperation, affection, and sexual relations that the spouses shared prior to the injury and that but-for the injury, the two would continue to share.

Where, as here, the alleged marital injury is suffered during the pendency of a divorce, the spouse bringing the claim has placed the marital relationship at issue because in order to prove a loss of consortium, the

divorcing spouse must first prove the existence of consortium. Appellant cannot hide behind the attorney-client privilege to protect communications she had with her divorce attorney when it was appellant who placed her marital relationship, and consequently, the state of the divorce, at issue by including a claim for loss of consortium in her complaint. To do so would frustrate the administration of justice by giving appellant an unfair advantage and by prejudicing WBH's defense of the claim. Therefore, the trial court properly exercised its discretion when it ordered disclosure of the communications.

Appellant's second and final claims are dependent upon a finding that the attorney-client privilege protects the communications between appellant and her divorce counsel regarding appellant's and decedent's divorce. Because the trial court properly found otherwise, we need not address these claims.

Order affirmed. Case remanded. Jurisdiction relinquished.

Gantman, P.J. joins this Opinion.

Nichols, J. files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/23/2019